UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    vs.<br><br>CLARENCE YELLOW HAWK, a/k/a<br>ROBERT PULLIAN, a/k/a<br>CLARENCE YELLOW ELK,<br><br>            Defendant. | CR. 17-50090-01-JLV<br><br>ORDER |

**INTRODUCTION**

On May 3, 2019, a jury convicted defendant Clarence Yellow Hawk of first degree murder and discharging a firearm during a crime of violence.[1]   (Docket 263).   Defendant shot and killed Chris Janis on May 27, 2017, near Sharps Corner, South Dakota, on the Pine Ridge Reservation.   Defendant now moves for a new trial, arguing the court deprived him of a fair trial when it denied his request for a "mistake of fact" jury instruction.   (Docket 314).   The government opposes the motion.   (Docket 315).   For the reasons given below, the court denies the motion.

I.   **Facts**

Defendant does not raise a sufficiency of the evidence or other fact-intensive challenge to the trial.   The court will not recite the trial evidence in detail.   The factual summary given here is essentially undisputed.

---

[1]The jury acquitted defendant of possessing a firearm with an obliterated serial number.

On May 27, 2017, Chris Janis was in Rapid City, South Dakota, attending a family gathering. (Docket 273 at p. 73). Chris' cousin, Cheryl Janis, was at the gathering as well. Id. at p. 74. Chris and Cheryl left the gathering and traveled to the Pine Ridge Reservation.[2] Id. at pp. 74-75. They intended to sell hydrocodone pills to Scott Benson at Thunder Valley, an area on the reservation near Sharps Corner. (Docket 274 at pp. 32-33, 39, 44-45). They drove to Thunder Valley together in Chris' minivan and parked at an "approach"—a turnoff from the paved road leading to residences. Id. at pp. 51-52.

Mr. Benson had been drinking alcohol on May 27 with two other men, defendant and Jamie Shoulders. Id. at p. 200. Defendant and Mr. Benson were close friends. (Docket 275 at pp. 65-66). The three men went to Thunder Valley together. (Docket 274 at p. 212). Upon arrival at the approach where Chris and Cheryl were parked in the minivan, Mr. Benson exited his vehicle and got into the rear passenger seat of the van, behind Cheryl. Id. at p. 232. While Chris and Mr. Benson were discussing the drug sale, Mr. Shoulders shot Chris through the van's front driver's side window. Id. at pp. 65-66, 68-69; Docket 275 at pp. 4-5. Mr. Benson and Cheryl were inside the van when Mr. Shoulders began shooting. Both testified at trial.

Mr. Benson and Cheryl left the van when Mr. Shoulders began shooting. (Docket 275 at pp. 7-8). Mr. Benson then ran around the back of the van. Id. at p. 10. From that location, he saw Mr. Shoulders drop the gun on the ground

_____

[2]To avoid confusion, the court refers to Chris Janis and Cheryl Janis by their first names.

and defendant pick it up.   Id. at pp. 10-11.   Defendant then fired three or four more shots into Chris.   Id. at pp. 11-13.   Chris died at the scene.   (Docket 274 at p. 152).   The cause of death was multiple gunshot wounds.   (Docket 275 at p. 129).

When law enforcement arrived on scene, they found Chris in the driver's seat of the minivan, slumped over to the right such that his arms were in the space between the driver's and passenger's seats.   Docket 274 at pp. 153-54; see also Trial Exs. 56, 58, 64, 88-89.   Chris customarily kept a Sig Sauer handgun in the compartment between those two seats.   (Docket 273 at pp. 70-72).   Law enforcement found a Sig Sauer handgun on the rear passenger side floorboard.   Docket 274 at p. 158; see also Trial Exs. 58-60.

Defendant did not testify or call any witnesses.   (Docket 276 at p. 40).

## II.   Legal Standards

### A.   Motion for a new trial

Federal Rule of Criminal Procedure 33 permits the court to vacate the jury's verdict and grant a new trial.   Fed. R. Crim. P. 33(a).   The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court."   United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).   The court's discretion is both broad and limited.   Id.   It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict."   Id. (internal quotation marks and citations omitted).   "[T]he court need not view the evidence

most favorably to the verdict[.]" <u>United States v. Worman</u>, 622 F.3d 969, 977 (8th Cir. 2010). The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. <u>Id.</u> at 978.

**B.     Jury instructions**

"A defendant is entitled to have an instruction to the jury on his or her theory of the case if sufficient evidence was introduced at trial to support the instruction and a proper request for it was made." <u>United States v. Iron Eyes</u>, 367 F.3d 781, 784 (8th Cir. 2004). "A 'proper request' must set forth a correct statement of the law." <u>Id.</u> "A district court need not adopt a defendant's proposed instruction if other instructions given to the jury adequately cover the substance of the requested instruction." <u>United States v. Waits</u>, 919 F.3d 1090, 1093 (8th Cir. 2019). The court "evaluate[s] the adequacy of the jury instructions by viewing them as a whole and in the context of the trial." <u>United States v. Vore</u>, 743 F.3d 1175, 1182 (8th Cir. 2014).

**III.   Analysis**

The court first finds the government forfeited any objection to the timeliness of the motion for a new trial. The jury reached its verdict on May 3, 2019. Defendant's motion for a new trial was due on May 17. Fed. R. Crim. P. 33(b)(2). On August 12—almost three months late—defendant moved for an extension of time to file his motion. (Docket 288). Defense counsel stated that planned vacation and commitments in other cases prevented him from timely

filing the motion.[3]  Id.  The government did not respond to the motion.  The court granted it.  (Docket 295).

The government forfeited any timeliness argument by failing to raise it when defendant moved for an extension on in its merits briefing.  See Eberhart v. United States, 546 U.S. 12, 19 (2005) (holding the government forfeits a timeliness defense to a Rule 33 motion when it raises it for the first time after merits briefing).  The court proceeds to the merits of defendant's motion.

## A.  Denial of defense jury instruction requests

Defendant requested a mistake of fact jury instruction twice.  His first proposed instruction stated:

> An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent.
>
> Where a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief in those facts, which, if true, would not result in the commission of a crime, the person is not guilty.

(Docket 219 at p. 3).  He cited only South Dakota law in support of his proposed instruction.  Id.  The government opposed the request, arguing it did not correctly state South Dakota law and would confuse the jury at trial.  (Docket 221).  The government contended the court's standard intent instruction would allow the defendant to make his mistake of fact argument to the jury.  Id.

_____

[3]Whether defense counsel's vacation and other work commitments constitute "excusable neglect" for failure to timely seek to extend the new trial motion deadline under Federal Rule of Criminal Procedure 45(b)(1)(B) is immaterial because the government's forfeiture of the argument is dispositive.

At the pretrial conference, the court orally denied the defense's proposed instruction. The court reasoned the proposed defense instruction was adequately covered by the court's intent instruction, which stated "[a]n act is done 'knowingly' if a person realizes what he is doing and does not act through ignorance, mistake, or accident." (Docket 246 at p. 13). However, the court permitted defendant to reoffer the mistake of fact instruction for inclusion in the court's supplemental instructions. The court also ordered defendant to support his request with federal case law.

Defendant offered his second proposed mistake of fact instruction before trial. It stated:

> An act committed under an ignorance of or mistake of fact which disproves any criminal intent is not a crime.
>
> Where a person in good faith believes in the existence of certain facts, and acts with reference to such believed facts in a manner which would be lawful if the facts were really as he believes them to be, he is not guilty of a crime, although his act is such that, if committed or made by one who knew the true facts, it would constitute a criminal offense.
>
> A genuinely held mistake of fact may negate a required mental intent to commit a crime, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable person.

(Docket 241 at p. 2). In support of his proposed instruction, defendant cited two cases from the United States Court of Appeals for the Eighth Circuit. Id. (citing Means v. Solem, 646 F.2d 322 (8th Cir. 1990); Iron Eyes, 367 F.3d 781). The government opposed the proposed instruction. (Docket 247). It argued the

court's primary jury instructions adequately instructed the jury on intent and allowed him to present his mistake of fact defense.   Id. at p. 5.

The court again rejected defendant's proposed instruction.   (Dockets 276 at p. 77 & 255).   The court concluded "the absence of mistake has to be proven . . . beyond a reasonable doubt" because "knowledge is an element of the offense[.]"   (Docket 276 at p. 77).   Accordingly, the court found its standard intent instruction sufficient to enable the defense to argue a mistake of fact theory to the jury.   Id. at pp. 76-77.

## B.    Factual predicate for mistake of fact instruction

The government first asserts the evidence at trial was insufficient to support a mistake of fact instruction.   (Docket 315 at pp. 6-7).   It argues there was no evidence concerning defendant's state of mind during the drug sale and shooting because he did not testify.   Id. at p. 7.   In response, defendant contends he did not need to testify in order to merit a mistake of fact instruction. (Docket 316 at p. 2).   He argues he produced sufficient circumstantial evidence to warrant the instruction.   Id. at pp. 2-3.   The court agrees with defendant.

The parties did not cite any case law establishing a specific burden of production for a mistake of fact instruction.   In its leading case on mistake of fact instructions, the Eighth Circuit only recited the general rule that a theory of defense instruction must be given "if sufficient evidence was introduced at trial to support the instruction."   Iron Eyes, 367 F.3d at 784.   The law on intoxication instructions is informative in determining the meaning of "sufficient

7

evidence" in this context because both intoxication and mistake of fact instructions support lack-of-intent defenses. In resolving the government's sufficiency challenge, the court will adopt into the mistake of fact context the Eighth Circuit's long-held rule that an intoxication instruction is warranted when there is "some evidence" that a defendant "was drunk enough to completely lack the capacity to form the requisite intent." United States v. Garrett, 898 F.3d 811, 815 (8th Cir. 2018) (quoting United States v. Kenyon, 481 F.3d 1054, 1070 (8th Cir. 2007)). The court thus must determine whether there was "some evidence" produced at trial to support defendant's mistake of fact defense. However, "mere speculation" is insufficient to warrant an instruction. United States v. Phelps, 168 F.3d 1048, 1056 (8th Cir. 1999).

The court finds there was sufficient evidence to support a mistake of fact instruction. The defense theory of the case was that defendant reasonably, even if perhaps mistakenly, believed he needed to use deadly force to protect himself, Mr. Benson or Mr. Shoulders from Chris' "imminent use of deadly force[.]" (Docket 314 at p. 2). The trial evidence showed Chris kept a handgun in his van and he was found twisted in his seat as if he was reaching for his gun. Evidence also showed the gun was found on the rear passenger floorboard, perhaps recently dropped. Finally, Mr. Benson testified he and defendant were close friends. The jury could reasonably infer that Chris pulled out his gun to threaten Mr. Benson and that defendant acted in defense of his friend—or, that defendant reasonably, though mistakenly, believed that series of events was

occurring.    The trial evidence was sufficient to allow the jury to believe defendant's proffered mistake of fact theory without his testimony.

### C.    Adequacy of jury instructions

The government next argues the court's instructions allowed the jury "to determine whether [defendant] was, indeed, acting in self-defense even if his belief of imminent harm against him or his accomplices was mistaken."    (Docket 315 at p. 8).    Defendant summarily states in his opening and reply briefs that the court's intent instruction was "not sufficient to cover the defense theory" but does not explain the supposed insufficiency.    (Dockets 314 at p. 6 & 316 at p. 3). The court finds its instructions adequately covered the substance of defendant's requested instruction.

Iron Eyes is the Eighth Circuit's most instructive case on mistake of fact instructions.    Mr. Iron Eyes was convicted of possessing a stolen firearm, which requires a defendant to know or have reasonable cause to believe the firearm was stolen.    Iron Eyes, 367 F.3d at 783 (citing 18 U.S.C. § 922(j)).    He requested a mistake of fact instruction stating, "a genuinely held mistake of fact may negate a required mental intent to commit a crime, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable person."    Id. at 784.    The Eighth Circuit held the proposed instruction accurately stated the law.    "The applicable principle is that if a defendant reasonably though mistakenly believes facts that negate the mental

state necessary for conviction of the offense with which he or she has been charged, the crime simply has not been committed." Id.

However, the Eighth Circuit held it was not error to refuse Mr. Iron Eyes' proposed instruction, even though it was an accurate statement of the law. The district court instructed the jury it had to find Mr. Iron Eyes "knew or had reasonable cause to believe the firearm was stolen" in order to convict. Id. at 785. This was an "adequate statement of the applicable law" because defense counsel "was allowed to argue to the jury that his client thought the guns" belonged to another person. Id.

Here, the court instructed the jury both on the government's burden to prove lack of mistake and on defendant's defense of others theory. The court instructed the jury that " '[i]ntent' and 'knowledge' are elements of the offenses charged in this case and must be proven beyond a reasonable doubt. . . . An act is done 'knowingly' if the person realizes what he is doing and does not act through ignorance, mistake, or accident." (Docket 246 at p. 13). The court further instructed the jury that:

> Mr. Yellow Hawk's position is he acted in defense of himself, Jamie Shoulders or Scott Benson. If a person reasonably believes that force is necessary to protect himself or another person from what he reasonably believes to be unlawful physical harm about to be inflicted by another and he uses such force, then he acted in defense of himself or others. . . . The burden is on the government to prove beyond a reasonable doubt that Mr. Yellow Hawk was not acting in defense of himself, Mr. Shoulders or Mr. Benson during the incident alleged.

(Docket 251 at p. 15). Finally, the court instructed the jury that it had to find defendant was not acting in defense of himself or others in order to convict on the homicide counts.[4] Id. at pp. 5, 8, 11.

Taken as a whole, these instructions adequately covered the substance of defendant's proposed instructions. Defendant's theory of the case was he believed he needed to shoot Chris in order to protect himself, Mr. Benson or Mr. Shoulders and his belief was reasonable in light of the circumstances of the shooting. (Docket 314 at pp. 2-4). Because defendant was acting in defense of himself or others, the homicide was justified, whether or not his subjective beliefs leading him to shoot were mistaken. Id. The court instructed the jury (1) that a reasonable belief that deadly force was necessary to protect defendant or others can justify homicide; (2) that the government had to prove beyond a reasonable doubt defendant was not acting in defense of himself or others to achieve a homicide conviction; and (3) that the government had to prove beyond a reasonable doubt that defendant did not act by mistake. In order to convict defendant of first degree murder, the jury had to consider the substance of defendant's mistake of fact theory because it had to conclude defendant was not acting in defense of himself or others and that he did not act by mistake.[5]

_____

[4]The court granted the parties' joint motion for lesser included offense instructions regarding second degree murder and voluntary manslaughter. (Dockets 249 & 276 at pp. 10, 67-69).

[5]Defense counsel argued a mistake of fact theory to the jury in his summation and referenced the court's instructions. (Docket 276 at pp. 139-43, 156, 158-59, 161-62).

The court is mindful of the Eighth Circuit's dicta in <u>Iron Eyes</u> stating,

> When a defendant presents evidence of a mistake of fact and, as here, proffers a jury instruction that accurately states the law on that issue, perhaps it might be the better practice to give the instruction to ensure that the jury understands exactly how subjective mistakes of fact can negate the mental state required for conviction.[6]

<u>Iron Eyes</u>, 367 F.3d at 785.   Nevertheless, the court finds its instructions, like those of the district court in <u>Iron Eyes</u>, "adequately informed the jury" about defendant's mistake of fact defense.   <u>Id.</u>   "The jury simply rejected [the] defense on the facts."   <u>Id.</u>

The court concludes there was no instruction error in this case. Defendant did not assert any other trial error.   The court accordingly finds no "miscarriage of justice" occurred in this case and denies defendant's motion for a new trial.   <u>Worman</u>, 622 F.3d at 978

## ORDER

For the reasons given above, it is

ORDERED that defendant's motion for a new trial (Docket 314) is denied.

---

[6]Although the government did not challenge the legal correctness of defendant's proposed mistake of fact instructions during trial or in its briefing on the current motion, the court notes the instructions present an unaddressed legal question.   The instructions (and the case law) speak of negating a mental intent required for conviction.   <u>See</u> <u>Iron Eyes</u>, 367 F.3d at 784 ("[I]f a defendant reasonably though mistakenly believes facts that negate the mental state necessary for conviction . . .").   However, defendant proposed to *establish* an intent through mistake of fact—his reasonable belief that deadly force was required to protect himself or others.   The court expresses no opinion as to whether that difference renders his proposed instructions legally incorrect.

IT IS FURTHER ORDERED that an order setting sentencing deadlines shall issue.

Dated February 18, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE